GORE *v.* CANADA LIFE ASSURANCE CO.

1. Principal and Agent — Life-Insurance Company — Unauthorized Contract by Agent—Holding Out—Estoppel.
    Where neither the manager of the Michigan branch of a life-insurance company nor the local superintendent of agents had authority to bind the company by a contract of employment of a solicitor, the company is not bound by such a contract made by them unless it has so held them out as having such authority as to induce the solicitor to rely upon it, and to estop the company from denying it.

2. Same—Holding Out—Evidence—Sufficiency.
    Possession by the manager of the Michigan branch of a life-insurance company of a single copy of a blank contract of agency, which the officers of the company testify they did not know he had and was not intended for use in Michigan, is not such a holding out of the manager as having authority to enter into such a contract on the company's behalf as to estop it from denying such authority.

3. Same—Ratification.
    Where a life-insurance company placed its business in Michigan in the hands of an agent upon the basis of a commission, and their contract contemplated the maintenance of headquarters here, and the soliciting of business by such agent through agents appointed by him, the company to assume no obligation to such soliciting agents, the fact that the company required bonds from the soliciting agents was not an admission that it had other contract relations with them involving a promise to pay for their services rendered to the general agent.

4. Same.
    That under its contract with its Michigan agent the company placed a representative in the Michigan headquarters, who officiated as bookkeeper and custodian of the funds received which, under the contract, belonged to the company; and that in the books there kept and in the books kept at the home office a soliciting agent's name appears as credited with commissions due him and charged with payments, do not show a ratification of contract relations between the company and the soliciting agent, where the bookkeeping may

be regarded as a necessary means of safeguarding the company's interests and maintaining the efficiency and economical administration of the branch in the interest of the agent and his solicitors as well as of the company.

5. SAME

That a life-insurance company included plaintiff's name in the list of agents filed with the insurance commissioner pursuant to section 7246, 2 Comp. Laws, does not show a ratification of an unauthorized contract by the company's agent obligating the company to pay plaintiff's commissions on business secured for the agent by him.

Error to Wayne; Hosmer, J. Submitted January 24, 1907. (Docket No. 46.) Decided October 4, 1907.

Assumpsit by Henry H. Gore against the Canada Life Assurance Company for agent's commissions. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Affirmed.

*Maybury, Lucking, Emmons & Helfman*, for appellant.

*Russel, Campbell & Bulkley*, for appellee.

HOOKER, J. This cause was before us on a former occasion and is reported in 119 Mich. 136, where the main facts are set forth at length. We then said that there were two theories upon which the plaintiff might recover in his action. *First*, that Glass actually had authority to make a contract that the defendant should pay for his services. *Second*, that the Company's conduct was such a holding out as to justify his belief that Glass had such authority, thereby constituting an estoppel to deny it. Plaintiff has again appealed from a verdict and judgment by direction of the court.

This record, like the other, conclusively shows that the Canada Life Assurance Company put its business in Michigan, i. e., the obtaining of applications for insurance and loans, which is the only business it does, in the hands of Cox, upon the basis of a commission. Their contract contemplated the maintenance of headquarters

in Detroit and the soliciting of business by Cox through agents appointed by him; but it is beyond question that the company was to assume no obligation to such agents.

Cox appointed one or more persons to have charge of the business, one of whom, Bucknell, was known as manager of the Michigan branch, and another, Glass, went by the name of superintendent of agents. These men were paid salaries or commissions, possibly both, by Cox, and solicitors who worked upon commission, also paid by Cox, were appointed by one or both of them.

It is admitted that the plaintiff went to work at the business of soliciting applications for insurance in the Canada Life Company under an arrangement made with Glass. He states, that Glass arranged with him to work *for* the Canada Life, and that he afterwards had talk with Bucknell, who was the manager, asking for a written contract, which Bucknell said he could have if he wanted it, and gave him a blank to fill up, at the same time telling him that the oral contract would be as good, as it was "just the same." This blank was apparently designed for a contract between the defendant company and agents who should contract directly with it. It contained blanks for the signatures of the president, secretary, and the agent, and nothing suggesting the intervention of a manager or other person conducting the Michigan branch appeared in it. It is contended that this statement of Bucknell showed an understanding of the parties to the conversation, viz., Bucknell and plaintiff, that the contract was made by the company.

We held upon the former hearing that neither Bucknell nor Glass had authority to so bind the company, and this as conclusively appears from the record. The defendant cannot be bound even if it was the understanding between Bucknell and the plaintiff that the defendant should be bound unless the record shows such a holding out of authority of the manager or Glass, as to induce plaintiff to believe and rely upon it, and to estop the defendant from denying it.

The only fact in the nature of a holding out that plaintiff could then have relied on was the alleged possession of this blank, and the record contains nothing but the bare fact of the possession of this one copy to indicate that the company furnished to the Detroit office any such blank. The officers deny all knowledge of it, say that those blanks were for use in Canada, and not in Michigan, while Bucknell denies the entire story of the plaintiff regarding it. We think there is not such proof that the company clothed Bucknell with apparent authority as to constitute an estoppel.

In this connection we should allude to certain other testimony relied on to show that the company ratified such contract by treating plaintiff as its agent. This testimony consists largely of entries in books of the company, applications bearing plaintiff's signature as agent, a list of district agents, kept at the home office, filed with the commissioner of insurance of this State, and published in its advertising matter, the fact that under the contract with Cox the company had a representative at the Detroit branch, who officiated as bookkeeper, and as custodian of the funds received, which, under the contract with Cox, belonged to the company, in which books the plaintiff's name appears, as credited with commissions due him, and charged with payments, some of which were made by checks signed by the bookkeeper, and the further fact that in some cases bonds had been furnished by solicitors to the company though not by plaintiff. These facts are not inconsistent with the plainly established fact that the company never authorized the contract relied upon.

The course of business in the Detroit office is not in doubt. Under its contract with Cox all moneys received on policies was the money of the company. It reserved the right to approve or disapprove the selection of solicitors. Requiring of bonds from solicitors who received moneys was not an admission that it had other contract relations with them involving a promise to pay for their services rendered to Cox.

When money was paid in it went into the hands of defendant's representative, who was authorized to disburse it as directed by the manager, within the lines of the Cox contract. It is not unnatural to suppose that the entire bookkeeping of the establishment was done by the company's agent, as a necessary means of safeguarding its interests, and maintaining the efficiency and economical administration of the business of the branch, in the interest of Cox and his agents as well as of the company, and it furnishes no evidence of a ratification of contract relations with plaintiff, and is in no sense an admission of such. The same may be said of other entries in company books, both at Detroit and in the home office.

A reference to 2 Comp. Laws, § 7246, Insurance Laws of Michigan 1905, p. 82, will show that all persons who in any manner aid in transacting the business of an insurance company are denominated agents, and are required to have certificates of authority issued by the department of insurance of the State, and that lists of such must be filed with the commissioner by the company.

Again, the record shows that the course of business of this company was to have its applications taken by solicitors, and turned in to the branch office, sent by its manager to the home office, where they were passed upon and rejected or accepted, and policies were returned through the branch office to the solicitor, who delivered them. If rejected, it is presumable that the money, if paid, was to be refunded. All of these things require bookkeeping at each step, and as already said it is not inconsistent with the absence of contract relations between the solicitor and the company. These applications were the culmination of negotiations between the prospective patrons and the solicitor, and the blanks contemplated statements of fact, by the solicitor or agent, as well as by the applicants, and assurances which could only be given by the solicitor were required of him.

We are of the opinion that the learned circuit judge was correct in saying that the additional evidence offered

·upon the last trial was not materially different in· character from that offered at the earlier hearing, and that it would not have justified his submission of the cause to the jury.   If the plaintiff has been wronged by the conduct of the managers of the Michigan branch in appropriating a portion of the commissions to which he is entitled, his remedy is not against the company.

·  The judgment is affirmed.

BLAIR, MONTGOMERY, OSTRANDER, and MOORE, JJ., concurred.